**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                         No. CR 12-1702 JB

DAVID AJUDUA,

      Defendant.

**<u>UNSEALED MEMORANDUM OPINION AND ORDER</u>**[1]

**THIS MATTER** comes before the Court on the United States' Ex Parte Application for Order Authorizing Disclosure of Tax Returns, Return Information, and Taxpayer Return Information and Request to Seal, filed Nov. 15, 2012 (Doc. 21)("Ex Parte Application"). The primary issue is whether the Court should grant the Ex Parte Application and issue an order ex parte under 26 U.S.C. § 6103(i) now that the investigation has become a criminal case. Because the Court does not believe that it has to entertain a petition ex parte or issue the order ex parte, and because the circumstances here do not suggest that any harm will come to Plaintiff United States of America if Defendant David Ajudua knows about the Ex Parte Application and the order, the Court will grant the Ex Parte Application on the merits, but will require a redacted original petition, redacted orders, and all related briefing to be disclosed within ten days of the entry of order to Ajudua's attorney on an attorney's eyes only basis before this order is sent to the Internal Revenue Service ("IRS").

---

[1]In its Sealed Ex Parte Memorandum Opinion and Order, filed Dec. 4, 2012 (Doc. 26)("Sealed MOO"), the Court inquired whether the United States had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. <u>See</u> Sealed MOO at 1 n.1. The Court gave the United States ten calendar days to provide notice of any proposed redactions. <u>See</u> Sealed MOO at 1 n.1. The United States timely filed its proposed redactions, and the Court made the appropriate redactions to its opinion and order. Consequently, the Court is now filing the Sealed MOO in an unsealed form.

## PROCEDURAL BACKGROUND

On July 10, 2012, Ajudua was indicted and charged with a violation of the following: (i) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; (ii) aiding and abetting bank fraud in violation of 18 U.S.C. § 1344; and (iii) aiding and abetting aggravated identity theft in violation of 18 U.S.C. § 1028(A). Ajudua was subsequently arrested on September 27, 2012.

On November 15, 2012, the United States filed its Ex Parte Application. See Doc. 21. On November 15, 2012, the United States filed its United States' Supplemental Memorandum of Law in Support of Ex Parte Application for Tax Return Information. See Doc. 72 ("Supplemental Brief"). The United States asserts that Ajudua, along with five others, "is charged by indictment with various crimes pertaining to his involvement in a conspiracy to steal the identities of unwitting victims and to use those stolen identities to fraudulently obtain access to bank accounts and lines of credit." Supplemental Brief at 1. The United States submits that "Ajudua's role in this conspiracy was to facilitate the identity theft by using access to proprietary databases to obtain personal identification information on potential victims." Supplemental Brief at 1. The United States also notes that "Ajudua obtained access to the proprietary databases that facilitated his offense [SEALED PORTION REMOVED]." Supplemental Brief at 1-2. The United States thus requests that the Court grant the Ex Parte Application, because "the United States now seeks tax information pertaining to Ajudua [SEALED PORTION REMOVED] in order to establish that the income and return information provided is inconsistent with a legitimate business." Supplemental Brief at 2. The United States filed under seal a form of Sealed Ex Parte Order to Disclose Tax Returns, Return Information, and Taxpayer Return Information.

At this point in the proceeding, of the six people indicted in this federal criminal case, it appears that only Ajudua is in the United States. Ajudua's other five co-Defendants appear to be

located in Nigeria.

## LAW REGARDING 26 U.S.C. § 6103(i)(1)(A)

In general, the IRS can, under some circumstances, be forced to disclose tax information, returns, and return information. Specifically, the IRS can be compelled to disclose information to federal officials for specified uses as authorized by statute. 26 U.S.C. § 6103(i) provides in relevant part:

(i) **Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration. --**

(1) **Disclosure of returns and return information for use in criminal investigations. --**

(A) **In general.** -- Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in --

(i) preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party,

(ii) any investigation which may result in such a proceeding, or

(iii) any Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party,

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

(B) **Application for order.** -- The Attorney General, the Deputy Attorney General, the Associate Attorney General, any

Assistant Attorney General, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, may authorize an application to a Federal district court judge or magistrate for the order referred to in subparagraph (A). Upon such <u>application</u>, such judge or magistrate <u>may</u> grant such order if he determines on the basis of the facts submitted by the applicant that --

(i)    there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed,

(ii)    there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of such act, and

(iii)    the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act, and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.

. . . .

(4)    **Use of certain disclosed returns and return information in judicial or administrative proceedings. --**

(A)    **Returns and taxpayer return information.** -- Except as provided in subparagraph (C), any return or taxpayer return information obtained under paragraph (1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party--

(i)    if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or

(ii)    to the extent required by order of the court pursuant to

-4-

section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure.

(B) **Return information (other than taxpayer return information).** -- Except as provided in subparagraph (C), any return information (other than taxpayer return information) obtained under paragraph (1), (2), (3)(A) or (C), or (7) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party.

(C) **Confidential informant; impairment of investigations.** -- No return or return information shall be admitted into evidence under subparagraph (A)(i) or (B) if the Secretary determines and notifies the Attorney General or his delegate or the head of the Federal agency that such admission would identify a confidential informant or seriously impair a civil or criminal tax investigation.

(D) **Consideration of confidentiality policy.** -- In ruling upon the admissibility of returns or return information, and in the issuance of an order under subparagraph (A)(ii), the court shall give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

(E) **Reversible error.** -- The admission into evidence of any return or return information contrary to the provisions of this paragraph shall not, as such, constitute reversible error upon appeal of a judgment in the proceeding.

26 U.S.C. § 6103(i)(emphasis added). Subsection (i)(1) authorizes federal officers and employees to obtain a court order to obtain returns and return information from the IRS. Subsection (i)(1) authorizes disclosure by the IRS only to federal officers and employees for their limited use in preparation for specified non-tax criminal proceedings, any investigation which may result in such proceeding, or any federal grand jury proceeding pertaining to such a statute. See 26 U.S.C. § 6103(i)(1)(A). Subsection (i)(1) specifically provides that the information shall be disclosed upon

the grant of an ex parte order by a federal district court judge or magistrate judge.  See 26 U.S.C. § 6103(i)(1)(A).  26 U.S.C. § 6103(i)(4) governs such disclosure beyond those working on an investigation, and relates to the use of returns and return information in judicial or administrative proceedings.  Subsection (i)(4) provides that returns and taxpayer return information may be disclosed in a judicial or administrative proceeding if: (i) the court makes certain findings regarding their probative value; or (ii) disclosure is required by court order pursuant to 18 U.S.C. § 3500 or by rule 16 of the Federal Rules of Criminal Procedure.  See 26 U.S.C. § 6103(i)(4)(A).  Thus, when the records need to be disclosed to people other than those tasked with the investigation, a specific court finding regarding their probative value, or 18 U.S.C. § 3500,[2] or rule 16, governs the disclosure.

With regard to returns or return information that is disclosed to federal officers or employees for the purpose of the administration of federal laws not relating to tax administration, see 26 U.S.C. § 6103(i); 26 C.F.R. § 301.6103(i)-1, returns and taxpayer return information obtained under 26

_____

[2]18 U.S.C. § 3500(a) and (b) provide:

(a)     In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b)     After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.  If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(a)-(b).  See United States v. Tarango, 760 F. Supp. 2d 1163, 1167-68 (D.N.M. 2009)(Browning, J.)(discussing this statute and related discovery principles).

U.S.C. § 6103(i)(1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to the enforcement of a specifically designated federal criminal statute or related civil forfeiture -- not involving tax administration -- to which the United States or a federal agency is a party if the Court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, see 26 U.S.C. § 6102(i)(4)(A).  There are, likewise, other ways to secure the information once the matter is the subject of a criminal case.  A court in a criminal case may order disclosure of such materials pursuant to a discovery order under 18 U.S.C. § 3500 or rule 16, see 26 U.S.C. § 6103(i)(4)(A)(ii), if the court gives due consideration to the congressional policy favoring the confidentiality of returns and return information, see 26 U.S.C. § 6103(i)(4)(D).  Return information other than taxpayer return information obtained under 26 U.S.C. § 6103(i)(1), (2), 26 U.S.C. § 6103(i)(3)(A) or (C), or 26 U.S.C. § 6103(i)(7) may be disclosed in any judicial or administrative proceeding pertaining to the enforcement of a specifically designated federal criminal statute or related civil forfeiture -- not involving tax administration -- to which the United States or a federal agency is a party.  See 26 U.S.C. § 6103(i)(4)(B).  Except in accordance with a discovery order in a criminal case, no return or return information may be admitted into evidence if the Secretary of the Treasury determines and notifies the Attorney General, or his or her delegate, or the head of the appropriate federal agency, that admission of the evidence would identify a confidential informant or seriously impair a civil or criminal tax investigation.  See 26 U.S.C. § 6103(i)(4)(C).  It is not proper for a district court to admit return or return information into evidence by entering an order authorizing the disclosure under 26 U.S.C. § 6103(i)(1)(B) after the fact when there has been no application for the order by an appropriate official.  See United States v. Mangan, 575 F.2d 32, 38-41 (2d Cir. 1978).

In United States v. Barnes, 604 F.2d 121 (2d Cir. 1979), the United States Court of Appeals

for the Second Circuit rejected the argument that the defendants "were entitled to have the information upon which the court issued its order and to a hearing on their motion to obtain it." 604 F.2d at 146. As the Second Circuit related: "There is nothing in the statute providing for notice to the taxpayer, a hearing on the application, or disclosure of the information on which the judge acted. In short, the procedure specified is Ex parte." United States v. Barnes, 604 F.2d at 146. In Weinstein v. Mueller, 563 F. Supp. 923 (D.C. Cal. 1982), the United States District Court for the Central District of California found that objection by a taxpayer who has been arrested on drug related charges, to the disclosure of information by the IRS to the United States Attorney prosecuting the case, on the ground that the court order allowing the disclosure was a "secret order," is without merit where: (i) information was disclosed pursuant to the district court's ex parte order, because 26 U.S.C. § 6103 specifically provides for ex parte orders; and (ii) there were no irregularities in the order itself or the manner in which it was obtained. 563 F. Supp. at 931-32. There is a qualified privilege that limits disclosure of federal tax returns for use in grand jury proceedings. See 26 U.S.C. § 6103(i)(1)(A)(iii); In re Grand Jury Subpoena, 144 F. Supp. 2d 541-42 (W.D. Va. 2001).

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property."

-8-

Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).

  "The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment." Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'" Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007).  See Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); Farthing v. City of Shawnee, Kan., 39 F.3d at 1135 ("Rather, property interests, which are the subject of the present litigation, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)); Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.").

  "[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing Morrissey

v. Brewer, 408 U.S. 471, 481 (1972)).  "An essential principle of due process is that a deprivation

of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the

nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542 (citing Mullane v. Cent.

Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  The Supreme Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be
> given an opportunity for a hearing before he is deprived of any significant property
> interest."  This principle requires "some kind of a hearing" prior to the discharge of
> an employee who has a constitutionally protected property interest in his
> employment.
>
> . . . .
>
> [T]he pretermination "hearing," though necessary, need not be elaborate.  We have
> pointed out that "[t]he formality and procedural requisites for the hearing can vary,
> depending upon the importance of the interests involved and the nature of the
> subsequent proceedings."  In general, "something less" than a full evidentiary
> hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations omitted).

The United States Court of Appeals for the Second Circuit has stated:

> The Supreme Court . . . explained that procedural due process is a flexible standard
> that can vary in different circumstances depending on "'the private interest that will
> be affected by the official action'" as compared to "the Government's asserted
> interest, 'including the function involved' and the burdens the Government would
> face in providing greater process."  Hamdi v. Rumsfeld, 542 U.S. 507, ----, 124 S.Ct.
> 2633, 2646 . . . (2004)(quoting Mathews v. Eldridge, 424 U.S. at 335 . . . ).  A court
> must carefully balance these competing concerns, analyzing "'the risk of an
> erroneous deprivation' of the private interest if the process were reduced and the
> 'probable value, if any, of additional or substitute safeguards.'"  Id. (quoting
> Mathews v. Eldridge, 424 U.S. at 335 . . .).

United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004).

"The introduction of new and material information by means of ex parte communications

to the deciding official undermines the . . . constitutional due process guarantee of notice . . . and

the opportunity to respond."  Stone v. F.D.I.C., 179 F.3d 1368, 1376 (Fed. Cir. 1999).  The United

-10-

States Court of Appeals for the Tenth Circuit has recognized that "not all ex parte proceedings violate due process or even raise a serious constitutional issue." <u>Estate of Trentadue ex rel. v. United States</u>, 397 F.3d 840, 865 (10th Cir. 2005).  The United States Court of Appeals for the Federal Circuit held that determining whether an ex parte communication violates due process turns on the introduction of new material that is likely to cause substantial prejudice to the opposing party.

> [N]ot every <u>ex parte</u> communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding.  Only <u>ex parte</u> communications that introduce new and material information to the deciding official will violate the due process guarantee of notice.  In deciding whether new and material information has been introduced by means of <u>ex parte</u> contacts, the [deciding official] should consider the facts and circumstances of each particular case.  Among the factors that will be useful . . . to weigh are:  whether the <u>ex parte</u> communication merely introduces "cumulative" information or new information; whether the [party] knew of the error and had a chance to respond to it; and whether the <u>ex parte</u> communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner.  Ultimately, the inquiry . . . is whether the <u>ex parte</u> communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances.
>
> If . . . an <u>ex parte</u> communication has not introduced new and material information, then there is no due process violation.  On the other hand, if . . . new and material information has been received by the deciding official by means of <u>ex parte</u> communications, then a due process violation has occurred and the . . . [party] is entitled to a new constitutionally correct removal procedure.

<u>Stone v. F.D.I.C.</u>, 179 F.3d at 1376-77.

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES PURSUANT TO RULE 16

During a criminal prosecution, the Federal Rules of Criminal Procedure and the United States Constitution impose upon the United States an obligation to disclose certain evidence to a criminal defendant.  Rule 16 of the Federal Rules of Criminal Procedure is one source that imposes such a duty on the United States.  The Due Process Clause of the United States Constitution is

another source imposing a duty to disclose on the United States.

1. **Rule 16.**

Rule 16 of the Federal Rules of Criminal Procedure provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i)    the item is material to preparing the defense;
> >
> > (ii)   the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii)  the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

Criminal defendants may not, however, embark on a "broad or blind fishing expedition among documents possessed by the Government." Jencks v. United States, 353 U.S. 657, 667 (1957)(quoting Gordon v. United States, 344 U.S. 414, 419 (1953)). Rule 16(a)(2) provides, in part, that rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The Supreme Court has interpreted the term "defense" in this statute as referring to "an argument in response to the prosecution's case in chief." United States v. Armstrong, 517 U.S. 456, 462 (1996)("We reject this argument, because we conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief.").

2. **Due Process Clause.**

"The Due Process Clause requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment." United States v. Padilla, No. CR. 09-3598,

2011 WL 1103876, at *5 (D.N.M. Mar. 14, 2011)(Browning, J.).  In Brady v. Maryland, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  In Giglio v. United States, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory.  See 405 U.S. at 153; Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting United States v. Bagley, 473 U.S. 667, 676 (1985))); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence.").  Finally, the Supreme Court has refined Brady v. Maryland and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. at 682).  See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005) ("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").  "[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information." United States v. Ashley, 274

-13-

F. App'x 693, 697 (10th Cir. 2008)(unpublished).[3]  See Weatherford v. Bursey, 429 U.S. 545, 559

(1977)("It does not follow from the prohibition against concealing evidence favorable to the accused

that the prosecution must reveal before trial the names of all witnesses who will testify

unfavorably.").

## ANALYSIS

The Court does not believe that it has to entertain a petition on Ajudua's tax information ex

parte or issue the order ex parte.  The circumstances here do not suggest that any harm will come

to the United States if Ajudua knows about the Ex Parte Application and the order as to his tax

return. The Court will grant the Ex Parte Application on the merits, but will require a redacted Ex

Parte Application, redacted order, and all related briefing to be disclosed within ten days of the entry

of order to Ajudua's attorney on an attorney's eyes only basis and before this order is sent to the

IRS.  The Court will allow the United states to redact Ajudua's personal information [SEALED

PORTION REMOVED].

## I.    THE COURT WILL GRANT THE EX PARTE APPLICATION ON THE MERITS.

The Court has received and considered the United States' Ex Parte Application for an order,

pursuant to 26 U.S.C. § 6103(i)(1), directing the IRS to disclose certified copies of certain tax

---

[3]United States v. Ashley is an unpublished order and judgment, but the Court can rely on it to the extent its reasoned analysis is persuasive in the present case.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  United States v. Ashley's analysis is helpful in this case.

returns, return information, and taxpayer information for:

|  |  |
|---|---|
| **NAME:** | **DAVID AJUDUA** |
| **ADDRESS:** | **xxxxxx, Alpharetta, Georgia** |
| **DOB:** | **xx/xx/xxxx** |
| **SSN:** | **xx-xx-xxxx** |

[SEALED PORTION REMOVED]

The requested information includes certified copies of tax returns, return information, taxpayer

return information, whether or not filed jointly with another person or entity, including Forms W-2

(Wage and Tax Statements), IRS Forms 4797 (Sales of Business Property), and other tax return

forms including, but not necessarily limited to, all types of transcripts, including, but not limited to

IPTRs, IMFs, and BMFs, as well as Transcripts of Accounts, Limited Liability Corporation returns,

federal corporate and/or partnership income tax returns, federal employment tax returns, federal

individual income tax returns and any amended or late returns submitted to the IRS for the tax years

requested (referred to hereinafter as "Tax Material").  Tax Materials described above, which comes

into possession of the IRS subsequent to the date of this order, but for not longer than ninety (90)

days thereafter is also requested to be disclosed.  The United States further requests certifications

where returns described above have not been filed, or are not on file with the IRS.  The United

States further requests disclosure of such certified Tax Materials to be delivered to the United States

Attorney's Office for the District of New Mexico.

After examining the application, this Court finds:

1.     Based upon information furnished by the Federal Bureau of Investigation ("FBI")

that is believed to be reliable, reasonable cause exists to believe that specific criminal acts have been

committed, namely, violations of 18 U.S.C. § 1349: Conspiracy, 18 U.S.C. § 1344: Bank Fraud, and

18 U.S.C. § 1028(A): Aggravated Identity Theft.  See 26 U.S.C. § 6103(i)(1)(B)(i).

2.      Reasonable cause exists to believe that the information in the Tax Materials is or may be relevant to a matter relating to the commission of such acts.  <u>See</u> 26 U.S.C. § 6103(i)(1)(B)(ii).

3.      The Tax Material is sought exclusively for use in a federal criminal investigation or proceeding concerning the above described acts, and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.  <u>See</u> 26 U.S.C. § 6103(i)(1)(B)(iii).

4.      The United States Attorney's Office for the District of New Mexico and its assigned attorney(s) are employees of the Department of Justice and one or more of its assigned attorneys are personally and directly engaged in (i) preparation for a judicial or administrative proceeding pertaining to the enforcement of a specifically designated criminal statute (not involving tax administration) to which the United States or such agency is or may be a party; (ii) an investigation relating to such a proceeding; or (iii) an additional federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party.  <u>See</u> 26 U.S.C. § 6103(i)(1)(A).

## II.   THE UNITED STATES SHALL MAKE ALL ITS REDACTED PETITION AND BRIEFING, AND THE COURT'S REDACTED ORDER, AVAILABLE TO AJUDUA'S ATTORNEY ON AN ATTORNEY'S EYES ONLY BASIS.

The United States relates that, in investigations and unindicted cases, the United States regularly obtains ex parte orders under 26 U.S.C. § 6103(i)(1) from magistrate judges to get tax records from the IRS for investigative use only.  <u>See</u> Supplemental Brief at 3 n.1.  The United States notes that the United States Attorney's Office for this District has, in the past, in indicted cases in which the United States had not previously obtained an order under 26 U.S.C. § 6103(i)(1), sometimes filed a single pleading with a district court judge to obtain the records from the IRS for investigative use under 26 U.S.C. § 6103(i)(1) and to ask the district court for a probative value

finding to, when appropriate, allow disclosure during discovery.  See Supplemental Brief at 3 n.1.

The United States asserts that, "[p]resently and in the future, however, the United States intends to

file a separate motion with the district court with service on the defendant when the specific (i)(4)

probative value court finding is sought."  Supplemental Brief at 3 n.1.  The United States relates

that, although 26 U.S.C. § 6103(i)(1) does not require it, and depending upon the individual case,

the United States also may file a motion with service on the defendant for a specific court order for

disclosure in a case even when 18 U.S.C. § 3500 or rule 36 -- the standard discovery order

provisions -- would cover the disclosure.  See Supplemental Brief at 2 n.1.  The United States asserts

that an application under 26 U.S.C. § 6103(i)(1) to get records from the IRS for investigative use

only should be ex parte pursuant to 26 U.S.C. § 6103(i)(1)'s language, regardless whether the case

has been indicted.

 The Court disagrees with the United States.  First of all, the particular provision that governs

this application is 26 U.S.C. § 6103(i)(1)(B), which does not mention the words "ex parte."  It states

that "any United States attorney . . . may authorize an application to a Federal district court judge

or magistrate for the order referenced to in subparagraph (A)."  26 U.S.C. § 6103(i)(1)(B).  Section

(i)(1)(B) then states: "Upon such application, such judge or magistrate may grant such application.

. . ."  26 U.S.C. § 6103(i)(1)(B)(emphasis added).  The Court thus retains some discretion not to

grant the application, even if all the requirements for such orders exist.

 That Congress omitted the phrase "ex parte" from (i)(1)(B), the Court believes, was

intentional.  See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 62 (2006))("We normally

presume that, where [Congress'] words differ . . . , 'Congress acts intentionally and purposely in the

disparate inclusion or exclusion.'")(quoting Russello v. United States, 464 U.S. 16, 23 (1983)).

There is no dispute that the Court's order pursuant to an application submitted under § 6103(i)(1)(B)

can be filed ex parte -- should the Court grant the application -- and that the IRS must respond to the Court's ex parte order.  See 26 U.S.C. § 6103(i)(1)(A)(stating that "any return or return information . . . shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under subparagraph (B), be open . . . to inspection by, or disclosure to, [identified] officers and employees . . .").  There is no language in § 6103(i) to suggest that the IRS would not or could not respond to a final court order if it were not granted ex parte.  But most important, the language in § 6103 supports the proposition that an order can, to fully comply with the (i)(1)(AA) and (B), be ex parte, and the application not.  If the defendants receive notice of the application, and maybe even the form of order, they may not object to, and may actually prefer, that the Court's order be ex parte.  The United States refers the Court to United States v. Tillman, No. 07 Cr. 1209 (LTS), 2009 U.S. Dist. LEXIS 35400 (S.D.N.Y. Apr. 6, 2009), where the Honorable Laura Taylor Swain, United States District Judge, stated: "Section 6103 . . . expressly provides for an ex parte application process." 2009 U.S. Dist. LEXIS 35400, at *10 n.3.  See Supplemental Brief at 4.  In United States v. Tillman, Judge Swain unsealed a previously sealed ex parte order under 26 U.S.C. § 6103(i)(1)(B), concluding that, because the investigation and case had terminated, the "the common law presumption of public access to judicial documents or the qualified First Amendment right of access," 2009 U.S. Dist. LEXIS 35400, at *11 n.4, outweighed the law enforcement interest in keeping the order sealed, 2009 U.S. Dist. LEXIS 35400, at *12.

United States v. Tillman, however, cuts against, rather than helps the United States' position that the application process should remain ex parte once the investigation becomes a case.  As Judge Swain concluded in United States v. Tillman, the Court agrees that law enforcement's legitimate interest in keeping the process and the order sealed is on a sliding scale -- largest while there is an ongoing investigation and smallest once the trial has concluded.  However great that interest is at

a certain point in the ongoing investigation and/or case must be balanced against competing interests.  Where in United States v. Tillman that interest was the legitimate First-Amendment interest that the public has in being allowed access to judicial documents, the interest in this case is Ajudua's interest in avoiding the United States, which is prosecuting him in this criminal case against him, having ex parte contact with the pretrial Court.  At this point in the litigation, when Ajudua has been arrested, indicted, and is in pretrial custody, his interest -- and the public's interest -- in Ajudua being provided a fair forum is considerable.  Law enforcement's interest -- in this case the United States' interest -- in keeping the application and order for disclosure of Ajudua's tax return information ex parte at this point is substantially less than it would be if law enforcement was still investigating Ajudua, rather than already engaged in this case against him.  Just as Judge Swain concluded that law enforcement's interest in keeping the order and applications sealed and ex parte were outweighed by the public's legitimate interest in access to judicial records once the trial ended, in this case, because the investigation of Ajudua has become a case against him, the interests in Ajudua being provided a fair forum outweighs the United States' interest in the application or the order for disclosing Ajudua's tax return information ex parte.

That is not to say that proceeding with the application and order ex parte, even to Ajudua, at this stage in the case is unconstitutional.  As the Tenth Circuit has recognized: "[N]ot all ex parte proceedings violate due process or even raise a serious constitutional issue."  Estate of Trentadue ex rel. v. United States, 397 F.3d at 865.  Moreover, any information that the United States obtains via the IRS' disclosure of Ajudua's tax return information which the United States intends to offer at trial will likely be disclosed before the case goes to trial under rule 16.  Even if the United States' Ex Parte Application or the Court's ex parte order to disclose Ajudua's tax information introduce new material into the case, because such information will be disclosed to Ajudua before trial, giving

him an opportunity to respond to the information, to proceed ex parte as to Ajudua, under these circumstances, does not substantially prejudice him to rise to a deprivation of property.  See Stone v. F.D.I.C., 179 F.3d at1376-77 (holding that whether an ex parte communication violates due process turns on whether "the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances.").   Thus, although the public's and Ajudua's interests outweigh law enforcement's and the United States' interests in communicating the application, briefing, and order for disclosure of Ajudua's tax return information ex parte as to him, the Constitution does not appear to preclude the United States' or the Court's ability to do so.

The Court does not, and cannot, disagree that Subsection (i)(1) provides for disclosure by ex parte order of return and return information for limited investigation purposes.  If the statute provides for an ex parte order to disclose taxpayer return information, it presumably allows for -- but does not necessarily require -- an ex parte application for ex parte order to disclose taxpayer return information.  In an investigation, as with a grand jury, there may be a need for confidentiality. Once the defendant is charged, however, and the investigation evolves into a case, much of the need for confidentiality -- at least for the parties to the criminal case -- disappears.   This seems particularly the case when the parties could also obtain the evidence under 18 U.S.C. § 3500 or rule 16; neither of which allow for application ex parte.   Section 3601 should not be used to apply ex parte for Court order to obtain evidence when the other methods do not provide for application ex parte.

Here, the United States freely concedes that this application is not for investigative use only, but will be used to prepare for trial.  See Supplemental Brief at 2 ("The instant application seek [sic] to obtain certain tax information for investigative and preparatory use only . . . .").  The United

States also maintains, however, that, in other cases, it could be significant that charged defendants would be notified of the additional investigation that could be revealed by virtue of the Subsection (i)(1) application and its content.  Thus, while the United States concedes that the tax information which it is seeking to obtain need not be ex parte because it is limited in this case to investigative purposes, it, on principle, maintains that, regardless of lack of prejudice or other problems in this case, the procedure set forth in Subsection (i)(1) is ex parte, which is why the United States has proceeded ex parte and why the United States suggests that the Court should as well.  The Court believes, however,  that Ajudua's and the public's interest in Ajudua being provided a forum that is not ex parte as far as possible -- even if not constitutionally required -- and the interests of fairness suggest that the application and order for disclosure of Ajudua's tax information, while may be kept under seal, should not proceed ex parte as to Ajudua.  The Court will therefore require that, within ten days of this sealed ex parte Memorandum Opinion and Order, the United States' redacted Ex Parte Application, redacted Supplemental Brief, and the redacted order be made available to Ajudua's attorney on an attorney's eyes only basis.

[SEALED PORTION REMOVED]

**IT IS THEREFORE ORDERED** that: (i) the Internal Revenue Service (a) disclose to the United States Attorney's Office, District of New Mexico, the requested certified copies of Tax Materials as to:

returns, return information, and taxpayer information for:

      **NAME:**            **DAVID AJUDUA**
      **ADDRESS:**     **xxxxxx, Alpharetta, Georgia**
      **DOB:**            **xx/xx/xxxx**
      **SSN:**            **xx-xx-xxxx**

[SEALED PORTION REMOVED]

for tax years: 2008, 2009, 2010, and 2011; (b) certify where returns described above have not been filed, or are not on file with the Internal Revenue Service, or that no such returns have been filed or are on file; (c) disclose such returns and return information described above as come into possession of the Internal Revenue Service subsequent to the date of this Order, but for not longer than ninety (90) days thereafter; (d) disclose no tax returns, return information or taxpayer return information; (e) deliver the Tax Materials to the United States Attorney's Office, District of New Mexico, as collected;

(ii) such Tax Material may be disclosed to officers and employees of any Federal agency who are personally and directly engaged in: (a) preparation for a judicial or administrative proceeding pertaining to the enforcement of a specifically designated federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party; (b) an investigation relating to such a proceeding; or (c) an additional Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party.  Disclosure shall be limited to the use of such officers and employees in such preparation, investigation, or grand jury proceeding.  26 U.S.C. § 6103(i)(l)(A).  Authorized use includes necessary disclosure to clerical and supervisory personnel for the Department of Justice or other Federal agency, as well as court reporters.  26 C.F.R. § 301.6103(i)-l (b)(2).

The following personnel from the United States Attorney's Office, are among those authorized to discuss this application and order with IRS disclosure personnel:

John C. Anderson, AUSA

Fred J. Federici, Supervisory AUSA

[SEALED PORTION REMOVED]

Further, to the extent necessary, in connection with any additional federal grand jury

proceeding, or the proper preparation for a proceeding (or in connection with an investigation relating to such a proceeding) disclosure of this Tax Material to other persons, regardless whether they are employees of the Department of Justice or other Federal agency, may be made under the following circumstances: (i) to properly obtain the services of persons having special knowledge or technical skills (such as, but not limited to, handwriting analysis, photographic development, sound recording enhancement, or voice identification); (ii) to properly interview, consult, depose or interrogate or otherwise obtain relevant information from, the taxpayer to whom such return or return information relates (or such taxpayer's legal representative) or any witness who may be called to give evidence in the proceeding; or (iii) to properly conduct negotiations concerning, or obtain authorization for, disposition of the proceeding, in whole or in part, or stipulations of fact in connection with the proceeding.  Disclosures listed in the preceding sentence may be made only if such purpose or activity cannot otherwise properly be accomplished without making such disclosures.  26 C.F.R. § 301.6103(i)-1(b)(1).

(iii) no disclosures be made to any other person except in accordance with this Order, and the provisions of 26 U.S.C. § 6103, and 26 C.F.R. §301.6103(i)-1.

(iv) upon the United States' request, and it appearing that the United States' application and this Order may reveal the existence of confidential tax information, the Ex Parte Application and this Order for disclosure of Tax Materials are hereby sealed until further order of the Court.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Richard C. Williams
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

John F. Robbenhaar
   Assistant Public Defender
Albuquerque, New Mexico

   *Attorney for the Defendant David Ajudua*